## GRAY v. MISSOURI, K. & T. R. CO. OF TEXAS.

### No. 2608.

Court of Civil Appeals of Texas. El Paso. Dec. 31, 1931.

Crabb & Smith, of Houston, for plaintiff in error.

Baker, Botts, Andrews & Wharton and Tom M. Davis, all of Houston, for defendant in error.

### WALTHALL, J.

Arthur Gray brought this suit in the justice court against Missouri, Kansas & Texas Railroad Company of Texas, to recover damages in the sum of $135, the alleged value of three cows, one steer, and one heifer, shipped by him from Many, La., to Katy, via Houston, Tex., over said railroad and connecting carrier. Said cattle thereafter were found dead at Houston. The case was prosecuted to judgment in the justice court, and duly appealed to the county court at law.

Briefly stated, appellant alleged the facts constituting his cause of action to be substantially as follows: He was the owner of said cattle at Many, La.; on the date stated he delivered the cattle to defendant at Many for shipment to Katy, Tex., via Houston, Tex.; that defendant for itself and its connecting carriers accepted and received the cattle to be safely and securely transported with reasonable dispatch over its and connecting lines from Many to Katy, for a reasonable rate paid, or to be paid, upon delivery at destination; that defendant did not deliver said cattle to plaintiff at destination but failed to do so, and so negligently handled its cars in which said cattle were loaded that said cattle were found dead at Houston; the reasonable market value of the cattle at destination was $135, the amount of his damages; that the cattle were in good shipping condition and were shipped for pasturage at Katy; that defendant delivered its shipper's live stock contract; that defendant failed and refused to pay, to plaintiff's damage in the sum of $175; alleged the presentation of his claim before filing suit, employment of counsel, and his agreement to pay reasonable compensation, stating same, for all of which he sues.

Appellee answered by general demurrer; general denial; denied negligence in the shipment of the cattle; alleged that the shipper sent caretakers with the cattle; alleged their duty; pleaded a provision of shipment contract to the effect that shipment to be made by no particular train or time for particular market, and that cattle were shipped with reasonable dispatch; cattle were not in good shipping condition when delivered; death of cattle was caused solely by their inherent vices, etc., without any concurring negligence on part of carrier; that the death of the cattle sued for was caused solely by unavoidable risk incident to the transportation in their condition.

The case was submitted to a jury on special issues and judgment rendered on the jury's findings.

The jury found:

1. The cattle that died were delivered to carrier in good condition for shipment at the time.

2. The death of the cattle was due to their own inherent vices and defect.

3. The carrier transported the cattle from point of origin to Houston Packing Company with ordinary care and diligence.

4. Negligence of the carrier, if any, was not the proximate cause of the death of the cattle.

5. The reasonable market value on arrival at Houston of the cattle that died was $135.

Appellant duly prosecutes this appeal by writ of error.

## Opinion.

Appellant offered in evidence the shipment contract except as to certain exceptions noted on the contract relating to the condition of the cattle as written on the contract. Appellee thereupon offered the part of the contract containing such notation, to which appellant objected on several grounds, stated in the bill of exceptions.

[■ We have been unable to find in the record any statement of what the notation on the bill of lading or contract was. If the notation was read to the jury from the contract, the record does not show that it was. No witness seems to have testified to what the notation was; appellant's bill of exception does not state it, nor do the briefs of either party give us any information as to the verbiage of the notation. We have been unable to decipher it from the bill of lading itself, and if the jury knew no more of what the notation was than the record discloses they could not have known or considered it. If the notation stated that the cattle were other than in a shipping condition as appellant seems to infer, the cases of Morris v. Davis (Tex. Civ. App.) 3 S.W.(2d) 109, and Lancaster v. Rogers & Adams (Tex. Civ. App.) 235 S. W. 646, and Patterson v. Railway Co. (Tex. Civ. App.) 126 S. W. 336, control the question, and the admission of the notation was error. However, in the absence of any statement of what the notation was, we may not indulge in the presumption that the notation had any effect on the jury's finding for the reason the jury found the cattle at the time of shipment were in good condition for shipment. No reversible error is shown.

■ Appellant's proposition that no caretaker representing the shipper accompanied the shipment is not borne out by the record. W. J. Metcalf shipped the cattle for appellant. He apparently signed the shipment contract. He testified: "I had a caretaker with the cattle, they were Clarence Latham and Walter Latham; this man Latham went with my permission and agreement to accompany the cattle as caretaker. He was working for me."

J. S. Gledhill, agent at Many, testified: "W. S. Latham and C. E. Latham represented himself as agent of the shipper and signed separate contract with man in charge of livestock. * * * W. S. Latham and C. E. Latham accompanied the cattle as attendant or caretaker when they moved from Many, Louisiana. I issued transportation to these attendants to Houston, Texas, on request of W. J. Metcalf, shipper."

Three conductors in charge of the train over which the cattle moved from Many to Houston testified to the fact that a caretaker accompanied the shipment.

■ The court admitted answers to each of three train conductors in charge of the shipment to the question by deposition: "Was there any rough or improper handling of these cars while the same were in your charge?" To which each witness answered, "None." Appellant objected to the question and answer on the ground that the question was leading, called for a conclusion of the witness. We think the question is not objectionable as being leading. The question does not suggest a desired answer; nor do we think that the inquiry as to "rough or improper handling" contains more than one fact inquired about, nor embraces a series of facts. The question does not, in our opinion, call for a conclusion of the witness, but the statement of a fact necessarily within the knowledge of the witness, not an end, termination, or fact believed in consequence of or as a result of investigation or reasoning.

Plaintiff offered in evidence Circular 7a, Supplement 6, Live Stock Rules promulgated by the Southern Lines, including defendant, which circular contains rules and conditions governing the transportation of live stock, item 5, subject, Attendants in Charge of Live Stock, the several paragraphs of which refer to the free transportation of those who shall accompany said stock as caretaker, as authorized by the Interstate Commerce Commission under authority No. 36775. The court, over objection that the circular offered was not a certified or properly authenticated copy and no proof that same was in fact a copy of the rule promulgated by the Interstate Commerce Commission, and that the offered evidence was immaterial and irrelevant, sustained the objection, and plaintiff assigns error.

■ We think no error is shown. No part of plaintiff's cause of action is based on defendant's refusal or failure to issue transportation, free or otherwise, to plaintiff's caretakers, or in any wise to comply with the rules contained in the offered circular, or that any damage resulted to plaintiff or plaintiff's cattle by reason of a refusal or failure to comply with the rules announced in the circular. On the contrary, as discussed above, the evidence clearly shows that at the request of plaintiff's agent, free transportation was issued to two caretakers, named by plaintiff's agent, and that at least one, if not both, accompanied the shipment.

It would be useless to discuss the purpose or provisions of the rule announced in the circular as an abstract proposition. Plaintiff refers us to several cases, but none of them discusses or refers to the subject of a live stock shipment; or the application of any rule, state or federal, applying to caretakers.

A number of bills of exception were taken to cross-interrogatories propounded by defendant to witnesses in depositions, as to whether in starting and stopping such train there is more or less slack causing a jerk or bump and the effect upon cattle in the cars as to whether they are thrown toward the end of the car and down, and whether such happened in the shipment in question; and the effect of coupling up a train after it had been uncoupled for switching; whether the witness, the train conductor, or any of the train crew, had anything to do with caring for the cattle, but depended upon the attendant to do so; whether the witness conductor was in sympathy with his employer, and his reports were always favorable to the employer; and whether witness' report would show rough or unusual handling—to all of which inquiries defendant objected for reasons stated, and to which the witness was permitted to answer. The questions and answers are numerous and lengthy. Defendant in his one proposition refers us to six of his bills of exception embracing the subject-matter of said questions and answers, and objections, and submits his propositions as follows: "The voluntary statements and arguments made by the employes of appellee, testifying by deposition, which were unresponsive to the question propounded, but contained voluntary statements of the witness, showing a colorful interest in the results of the suit and argumentative in its nature, should have been stricken out on motion of appellant."

Appellant's statement under the proposition does not state the evidence and arguments made by the several employees, but refers us to the six bills of exceptions for the evidence objected to. While we doubt the sufficiency of the statement under the proposition to require a consideration, we have referred to the several bills of exceptions in which the several questions and answers in the deposition are copied, and without copying them here, we have concluded that reversible error is not shown.

Appellant submits that there is no evidence showing that the cattle found dead at Houston were not in a condition to stand the shipment had they been handled with reasonable care.

We hardly see the necessity of considering the evidence of the several witnesses as to the condition of the cattle for shipment. While there was a sharp conflict in the evidence, the jury found they were in good condition for shipment at the time shipped.

The jury found that the death of the cattle was due to their own inherent vice and defect. The court defined "inherent vice" in the animals as meaning some quality or characteristic of the animals that bring about their own injury or destruction without fault on the part of any other supervening cause. Appellant, by several propositions, insists that the evidence was insufficient to raise such issue.

It is clear that none of the cattle died in the cars. The evidence does not show that any of them had been or were down in the cars, or had been bruised or trampled upon, nor any rough handling. They died in the pens the day following their arrival at Houston.

The cause of the death of the cattle as shown by the undisputed evidence of a veterinarian, qualified to speak, was that the cattle died from exposure to the bad, cold weather while in the pens at Houston. That evidence alone, in connection with the evidence as to the condition of the cattle at that time, was sufficient to justify the court in submitting issue No. 2 to the jury. The undisputed evidence as to the condition of the weather on the arrival of the cattle at Houston, and during the night they were in the pens at Houston, the want of evidence as to any other cause of their death as in the third finding, the jury evidently concluded and found from the facts stated that the cattle died from "their own inherent vice," as defined in the court's charge.

This is a fact case, and we think the evidence fully justified the submission of the issues to the jury.

Appellant in its brief states that the evidence shows delays of some three hours and fifty-eight minutes during the time the cattle were enroute from Many to Houston. The question of the effect on the cattle of the delays was not submitted to the jury. No issue of negligence as a fact was submitted, but the jury, on the fourth issue, apparently found that negligence, if any there was, was not the proximate cause of the death of the cattle.

We have closely reviewed the entire record, and have concluded that no reversible error is shown.

The case is affirmed.